**Affirm and Opinion Filed October 23, 2019**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-18-00813-CV

### BODUM USA, INC. AND BODUM HOLDING AG, Appellants
### V.
### J.C. PENNEY CORPORATION, INC., Appellee

**On Appeal from the 199th Judicial District Court
Collin County, Texas
Trial Court Cause No. 199-04943-2013**

## MEMORANDUM OPINION

Before Chief Justice Burns, O'Neill[1], and Rosenberg[2]
Opinion by Justice O'Neill

This dispute arises out of a failed business relationship between Bodum USA, Inc. (Bodum USA) and J.C. Penny Corporation (JCP). Bodum USA and its parent company, Bodum Holdings AG, (Bodum AG)[3] appeal the trial court's summary judgment in favor of JCP contending the trial court erred by (1) denying Bodum's motion for partial summary judgment regarding their breach of contract claim against JCP; (2) granting summary judgment in JCP's favor on all of Bodum's claims; and (3) overruling Bodum's objections to JCP's summary judgment evidence. Concluding no error exists with respect to JCP's motion, and its disposition further disposes of any issue with respect to Bodum's partial motion, we affirm.

---

[1] The Hon. Michael O'Neill, Justice of the Court of Appeals for the Fifth District of Texas at Dallas, Retired, sitting by assignment.

[2] The Hon. Barbara Rosenberg, Justice, sitting by assignment.

[3] Unless context requires specificity, both Bodum entities are referenced collectively as "Bodum."

## I. FACTUAL BACKGROUND

Pursuant to a Trading Partners' Agreement (TPA) executed in 2010, Bodum USA and JCP defined the terms of their nascent commercial relationship. The TPA's first paragraph specified that it applied to all purchase and sales transactions between the parties, defined each party as an independent contractor, and negated the existence of any other type of relationship, including a joint venture or partnership. The TPA authorized JCP to purchase Bodum merchandise but did not require it to do so; required a separate purchase order to create a contract regarding any purchase; negated JCP's liability for any special, incidental, exemplary, or consequential damages arising from JCP's breach of the TPA or "any other agreement or dealings between the parties"; and created a two year limitations period for any cause of action asserted by Bodum against JCP. The TPA also provided that:

> "No modification of, supplement to, or release or discharge from, this TPA, any Purchase Contract or other Transaction, the Terms and Conditions or any other agreement between the parties shall be valid unless it is offered or accepted in writing by the responsible Penney Divisional Merchandise Manager or one of his/her superiors and accepted by Seller in writing or through shipment of Merchandise."

Bodum AG was not identified as a party to the TPA and it did not sign the TPA, but the agreement stated it was binding upon and inured to the benefit of, "the parties and their respective successors, permitted assigns, and any parent, subsidiary or affiliated company effectively controlling, or controlled by, any of them."

A few years later, Bodum, which also sells Ordning & Reda (O&R) branded products, submitted a proposal to JCP seeking inclusion in a new "shops" concept, by which JCP would dedicate space in JCP stores for certain branded or concept merchandise. After negotiations, in November 2012, Bodum USA and JCP entered into a "Shops Agreement." The Shops Agreement specified the number of Bodum USA and O&R shops JCP would install, included details such as the square footage for each shop, and required Bodum to contribute up to $5 million towards the

2

Bodum shops and up to $5 million to fully fund the fixtures for the O&R shops. JCP agreed to invest in a Bodum "brand experience" on jcp.com. JCP also promised to consider "in good faith" Bodum's product suggestions for the shops and to purchase merchandise for the shops from Bodum or its licensees, but JCP retained the final discretion as to the merchandise placed in the shops. March 2013 was specified as the launch date, although delineation of responsibilities to accomplish the launch was not.

The Shops Agreement also provided:

**Subject to jcpenny's rights to relocate or otherwise change or alter the shops as specified below**, the parties agree that the Bodum and O&R Shops will be featured in the designated jcpenny stores for a period of 4 years from the opening date (the "Term"). Before March 1, 2016, the parties will negotiate in good faith to extend the agreement for an additional 3 years . . . (emphasis added) (the Term Provision).

On a separate page, the Shops Agreement included this provision:

**jcpenny may remove, alter, or relocate any and all Bodum or O&R Shops** or any portion of a Bodum or O&R Shop and a Bodum or O&R Shop may be relocated to other location within the jcpenny store in which it is installed or to and within another jcpenny store (provided, however, that in the event jcpenney removes or significantly alters the square footage of a shop, jcpenney shall refund to Bodum the pro-rata portion of the cost for such Bodum or O & R Shop (based on the number of the years left in the Term and the date of such shop change) (emphasis added) (the Removal Provision).

In the event of a conflict between the TPA and the Shops Agreement, the parties agreed the Shops Agreement controlled.

The shops concept expired quickly. In one large order, JCP ordered Bodum and O&R merchandise for all 683 shops projected by the Shops Agreement and payed Bodum more than $20 million for that merchandise. An unidentified number of shops began opening on a rolling basis in April 2013. During the same time period, the parties' relationship began deteriorating. The JCP executive who created the program resigned in April 2013, and both parties blamed the other for disappointing sales of the Bodum and O&R merchandise.

3

In August 2013, approximately four months after the launch, Bodum USA sued JCP in a New York state court.[4] After the New York lawsuit was dismissed, in December 2013, Bodum USA filed suit in Texas. Bodum AG, Bodum USA's Swiss parent company, was added as a new plaintiff in Bodum USA's First Amended Petition, filed in August 2017. Bodum AG pleaded it was a party within the scope of the TPA and therefore also a party to the Shops Agreement.[5]

Bodum asserted claims for breach of contract, promissory estoppel, breach of the implied covenant of good faith and fair dealing, and sought a declaratory judgment regarding any continuing obligation to fund costs related to the shops. Bodum alleged JCP materially breached its contracts with Bodum by terminating the Shops Agreement before the expiration of four years, as well as through numerous other acts and omissions. Bodum's claim for promissory estoppel rested on JCP's alleged promises regarding shop location, the look of the shops, a professional launch consistent with the parties' discussions, purchasing "safety stock," and JCP's failure to advertise Bodum and O&R products. Relying on a contention that the parties' relationship was a "massive joint effort," Bodum asserted a claim for breach of the implied covenant of good faith and fair dealing. Bodum also sought a declaratory judgment that it was not required to contribute any further amounts to fund fixtures for any shops. Bodum complained their damages included more than $4.8 million in development costs, program inventory worth $5.3 million, and over $1.6 million in shipping, fixture and display costs.

After considerable discovery, JCP filed no-evidence and traditional motions for summary judgment on all of Bodum's claims. Bodum objected to some of JCP's summary judgment evidence and also filed a traditional motion for summary judgment seeking a determination that

---

[4] The Bodum and O&R shops program was formally terminated in November 2013 by JCP.

[5] In the alternative to the claim for breach premised on Bodum AG's alleged capacity as a party to the Shops Agreement and the TPA, Bodum AG asserted a claim for breach of contract premised on its contention that it was a third-party beneficiary of both agreements.

JCP's early termination breached the Shops Agreement. Bodum's motion, however, was never set for hearing. After hearing arguments on JCP's motions, the trial court overruled Bodum's objections and "granted Defendant's Motion for Summary Judgment." No grounds for the judgment were specified, but the judgment recited that it was final and disposed of all claims and all parties.

## II. DISCUSSION

### A. Standard of review for summary judgments.

Orders granting summary judgment are reviewed de novo. *Lujan v. Navistar, Inc.*, 555 S.W.3d 79, 84 (Tex. 2018); *De La Cruz v. Kailer*, 526 S.W.3d 588, 592 (Tex. App.—Dallas 2017, pet denied). If no grounds are specified for the ruling, we must affirm on any meritorious grounds on which judgment was requested. *Merriman v. XTO Energy, Inc.*, 407 S.W.3d 244, 248 (Tex. 2013). If the appellant does not challenge all possible grounds on which summary judgment could have been granted, we must accept the validity of the unchallenged grounds and affirm the adverse ruling. *Oliphant Fin. LLC v. Angiano*, 295 S.W.3d 422, 423 (Tex. App.—Dallas 2009, no pet.); *see also St. John Missionary Baptist Church v. Flakes*, 547 S.W.3d 311, 312 (Tex. App.—Dallas 2018, pet. pending) (en banc).

The legal sufficiency standard that governs directed verdicts also governs no-evidence summary judgment motions. *RTLC AG Prods., Inc. v. Treatment Equip. Co.,* 195 S.W.3d 824, 829 (Tex. App.—Dallas 2006, no pet.). To defeat a no-evidence motion for summary judgment, the nonmovant must produce evidence regarding each challenged element of each challenged claim that "would enable reasonable and fair-minded people to differ in their conclusions." *Ford Motor Co. v Ridgeway,* 135 S.W.3d 598, 601 (Tex. 2004); *see also King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 751 (Tex. 2003) ("A no evidence point will be sustained when (a) there is a complete absence of evidence of a vital fact, (b) the court is barred by rules of law or of evidence from giving

5

weight to the only evidence offered to prove a vital fact, (c) the evidence offered to prove a vital fact is no more than a mere scintilla, or (d) the evidence conclusively establishes the opposite of the vital fact.") (internal quotation omitted). In reviewing a no-evidence summary judgment, we consider evidence in the light most favorable to the non-movant, crediting evidence a reasonable jury could credit and disregarding contrary evidence and inferences unless a reasonable jury could not. *De La Cruz,* 526 S.W.3d at 592.

With respect to a traditional motion for summary judgment, we require the movant to demonstrate the absence of a genuine issue of material fact and its entitlement to judgment as a matter of law. TEX. R. CIV. P. 166a(c); *Provident Life & Acc. Ins. Co. v. Knott,* 128 S.W.3d 211, 215–16 (Tex. 2003). If the movant satisfies this burden, to avoid summary judgment the nonmovant then bears the burden of demonstrating a genuine issue of material fact. *Lujan*, 555 S.W.3d at 84. We credit all evidence favoring the nonmovant, indulging every reasonable inference and resolving all doubts in its favor. *Johnson v. Brewer & Pritchard, P.C.,* 73 S.W.3d 193, 208 (Tex. 2002).

A.     **Summary judgment regarding Bodum's breach of contract claims was proper.**

JCP moved for traditional summary judgment on all claims asserted by both plaintiffs, and also asserted a no-evidence motion regarding the breach of contract and promissory estoppel claims. JCP asserted it conclusively established it did not breach the Shops Agreement by terminating it before the expiration of four years because the agreement unambiguously permitted termination by removal of all shops at any time. Bodum argued the Shops Agreement unambiguously required performance by both parties for four-years, but in the alternative, argued ambiguity existed regarding whether early termination was permissible.

6

### 1. Rules of construction.

Mere disagreement by the parties regarding contractual interpretation does not prove ambiguity. *URI, Inc. v. Kleberg Cty.*, 543 S.W.3d 755, 763 (Tex. 2018). Instead, contracts to which we can give definite or certain legal meaning are unambiguous and we construe them as a matter of law. *Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. CBI Indus., Inc.*, 907 S.W.2d 517, 520 (Tex. 1995) ("If a written contract is so worded that it can be given a definite or certain legal meaning, then it is not ambiguous."); *Columbia Gas Transmission Corp. v. New Ulm Gas, Ltd.*, 940 S.W.2d 587, 591 (Tex. 1996) ("The failure to include more express language of the parties intent does not create an ambiguity when only one reasonable interpretation exists."). We ascertain the parties' intentions by examining the entire writing, and give effect to all provisions so none are rendered meaningless. *Coker v. Coker,* 650 S.W.2d 391, 393 (Tex. 1983); *Green Meadow Oil & Gas Corp. v. EOG Res., Inc.*, 390 S.W.3d 625, 627 (Tex. App.—Dallas 2012, no pet.). We "presume parties intend what the words of their contract say" and interpret contract language according to its "plain, ordinary, and generally accepted meaning" unless the instrument directs otherwise. *URI, Inc.,* 543 S.W.3d at 764. We also ignore parol evidence that varies or contradicts the contract. *Id.* at 757 ("[E]xtrinsic evidence may only be used to aid the understanding of an unambiguous contract's language, not change it or "create ambiguity.").

### 2. Bodum failed to raise a question of fact in support of their breach claim premised on early termination.

Bodum argued JCP's right to "remove, alter, or relocate any and all" shops in the Removal Provision addressed JCP's rights with respect to individual shops during the four-year term, but did not alter the unambiguous four-year term provided by the Term Provision. Bodum asserted JCP as the drafter demonstrated the parties' intent to allow relocation or other changes or alterations of the shops during the term, but the omission of "remove" from the Term Provision demonstrated JCP was not contractually permitted to terminate the agreement by removing all

shops until after the expiration of four years. According to Bodum, the cost refund became payable if JCP removed or significantly altered the square footage of a shop, but was not indicative of a refund due upon removal of all shops. Bodum also claimed JCP's interpretation added "remove" to the Term Provision. We disagree.

Only ambiguous contracts are construed against their drafters, and only as a last resort. *Lewis v. Foxworth*, 170 S.W.3d 900, 903 (Tex. App.—Dallas 2005, no pet.) ("[D]octrine *of contra proferentem* is applied only when construing an ambiguous contract."); *Evergreen Nat. Indem. Co. v. Tan It All, Inc.*, 111 S.W.3d 669, 676 (Tex. App.—Austin 2003, no pet.) ("[D]octrine of *contra proferentem* is a device of last resort employed by courts when construing ambiguous contractual provisions."). As explained below, we conclude the Shops Agreement lacks ambiguity, and thus also reject application of *contra proferentem.*

Bodum's interpretation—that during the term JCP was permitted to remove shops only if placed within a new store or otherwise relocated or altered within any given JCP store—rewrites the Term Provision. "Remove" and "relocate" mean different things, and restricting a right to remove by requiring relocation ignores the distinction. Bodum also ignores JCP's further obligation to refund Bodum the pro-rata portion of the cost of any removed shop *during the term*, a provision with no meaning if every removed shop must be relocated, or if removal occurs only after the expiration of four years. Moreover, Bodum's argument fails to acknowledge that the Term Provision is "subject to" the Removal Provision. And, Bodum disregards the scope of the Removal Provision, which permits removal of "any and all" shops. We find no room for an interpretation other than the plain language to which the parties agreed, giving meaning to all words and phrases. *See TX. C.C., Inc. v. Wilson/Barnes Gen. Contractors, Inc.*, 233 S.W.3d 562, 567 (Tex. App.—Dallas 2007, pet. denied) (giving effect to two different paragraphs by "simply reading them together and giving them their plain meaning"); *Nicol v. Gonzales*, 127 S.W.3d 390, 395 (Tex.

8

App.—Dallas 2004, no pet.) (although term "garage" could include "out-building," construing phrase "a garage or out-building" to refer to two different structures provides meaning to both terms).

The Shops Agreement included a four-year term, but the plain language of the agreement unambiguously qualified the term as subject to JCP's "rights to relocate or otherwise change or alter the shops as specified below".[6]  Those subsequent rights unequivocally allow JCP to

> remove, alter, or relocate any and all Bodum or O&R Shops or any portion of a Bodum or O&R Shop. . .

The Termination Provision allowed JCP to remove any and all shops and thereby negate all other performance obligations. By construing all of the provisions of the Shops Agreement and giving each word and phrase its plain meaning, we conclude the Shops Agreement permitted JCP to terminate by removing all shops. In demonstrating the unambiguous meaning of the contract from its four corners, JCP demonstrated, as a matter of law, that it did not breach the Shops Agreement by terminating it.

We also reject the parol evidence relied upon by Bodum in support of its argument, since the proffered evidence seeks to define the parties' expressed intent, rather than provide context as an aid to determining the parties' intent. *See URI, Inc.,* 543 S.W.3d at 765 (parol evidence rule does not "prohibit courts from considering extrinsic evidence of the facts and circumstances surrounding the contract's execution as an aid in the construction of the contract's language, but the evidence may only give the words of a contract a meaning consistent with that to which they are reasonably susceptible, *i.e.*, to 'interpret' contractual terms.") (internal quotation omitted).

---

[6] "Subject to jcpenny's rights to relocate or otherwise change or alter the shops as specified below, the parties agree that the Bodum and O&R Shops will be featured in the designated jcpenny stores for a period of 4 years from the opening date . . ."

Finally, we reject Bodum's contention that Texas disfavors implied termination provisions. In support of this argument, Bodum cites *Ogden v. Gibraltar Sav. Ass'n*, 640 S.W.2d 232, 233-34 (Tex.1982), *Escondido Res. II, LLC v. Justapor Ranch Co, LC,* 04-14-00905-CV, 2016 WL 2936411, at * 3 (Tex. App.—San Antonio May 18, 2016, no pet.), and *Vinson Minerals, Ltd. v. XTO Energy, Inc.*, 335 S.W.3d 344, 358 (Tex. App.—Fort Worth 2010, pet. denied). We find these cases inapplicable. *Ogden* does not speak to implied termination—it addresses acceleration of a promissory note following default and the notices required by equitable concerns. *Id.* Likewise, *Vinson* deals with "the drastic remedy of forfeiture" and the sufficiency of notice by the lessor describing the lessee's breach and default; the conduct triggering the right of forfeiture. *Vinson Minerals, Ltd.,* 335 S.W.3d at 334-335. *Escondido Resources* was similar to *Vinson Minerals* in interpreting a provision whereby an oil and gas lease was forfeited—terminated according to its own express terms—due to the lessee's breach in failing to pay "true-up" production payments. Forfeiture of property or contractual rights arising from one party's breach is not the equivalent of a contractual agreement authorizing one party to terminate a contract without cause. And Texas jurisprudence fully embraces parties' rights to agree that contracts may be terminated without cause. *See Cmty. Health Sys. Prof'l Servs. Corp. v. Hansen*, 525 S.W.3d 671, 682 (Tex. 2017) (contracts may stipulate permissibility of termination without cause). Bodum provides no authorities supporting its sweeping contention that we disfavor termination provisions and we decline to provide any support for that principle here.

### 3. Bodum failed to raise a fact issue regarding breach premised on the refund amount paid by JCP.

JCP submitted evidence of the refund paid to Bodum following termination. Bodum claims a fact issue exists regarding whether JCP paid the entirety of the refund due Bodum—their pro-rata portion of Bodum's costs for the removed shops. Bodum, however, did not argue in either their response to JCP's motions for summary judgment or in their opening brief to this Court that

JCP breached the Shops Agreement by failing to fully refund Bodum's pro-rata costs. Instead, Bodum argued they were entitled to recover the entirety of their out of pocket losses for their claim for breach, and asserted the trial court erred in failing to grant their partial motion for summary judgment and award those damages. But entitlement to all out of pocket losses if Bodum prevailed on their own claim for breach falls far short of an argument contending the amount of the refund paid by JCP created a genuine issue of material fact regarding JCP's alleged breach. *See, e.g., Dallas Cty. v. Crestview Corners Car Wash*, 370 S.W.3d 25, 56 (Tex. App.—Dallas 2012, pet. denied) (differentiating between argument regarding error in admitting evidence and omitted argument challenging evidence as legally insufficient).

As an argument not raised below and not raised in this Court until Bodum's reply brief, we decline to find a fact issue regarding Bodum's entitlement to a refund exceeding the amount paid by JCP. TEX. R. CIV. P. 166a(c) ("Issues not expressly presented to the trial court by written motion, answer or other response shall not be considered on appeal as grounds for reversal."); *Stovall & Assocs., P.C. v. Hibbs Fin. Ctr., Ltd.*, 409 S.W.3d 790, 803 (Tex. App.—Dallas 2013, no pet.) (declining to consider argument raised for the first time in a reply brief, which was "wholly different" from arguments raised in opening brief). We overrule Bodum's second issue.

### 4. Bodum's breach claim premised on conduct other than early termination also fails.

In addition to pleading that JCP breached the Shops Agreement by terminating during the four-year term, Bodum asserted JCP breached in numerous other ways. In their opening brief, Bodum presents arguments only with respect to four of those alleged wrongful acts or omissions: (1) failing to purchase merchandise for the shops; (2) failing to continue selling Bodum and O&R merchandise on-line; (3) failing to open 683 shops; and (4) failing to launch any shops in March 2013.

JCP attacked the breach claims premised on these issues in several ways. It asserted a breach claim premised on the first two omissions was foreclosed by JCP's entitlement to terminate the Shops Agreement, which necessarily also terminated all continuing performance obligations. We agree. Any continuing obligation to purchase or sell merchandise was governed not only by the predicate viability of the Shops Agreement, but also by the provision of the TPA which allowed JCP to purchase and sell Bodum merchandise but did not obligate it to do so.

In its no-evidence motion, JCP also argued Bodum lacked evidence supporting three of the four elements of its breach claim, including resulting damages.[7] Although Bodum argues JCP's breach with respect to early termination caused damages, it fails to assert that failing to open all 683 shops or launch in March 2013 caused either Bodum entity specific damages.[8] We decline to scour the summary judgment record for arguments and evidence by Bodum in support of these arguments. *See De La Cruz*, 526 S.W.3d at 595 (nonmovant responding to no-evidence summary judgment motion must "do more than itemize the evidence and then, in a section totally separate from the recitation of the evidence, offer general conclusions that the above evidence conclusively establishes each element of the plaintiff's claims."); *Crestview Corners Car Wash*, 370 S.W.3d at 57 (appellate court may not consider issues absent from appellate briefing which are waived by their omission). We conclude the trial court correctly granted summary judgment in favor of JCP on Bodum's breach of contract claim, including breaches premised on acts or omissions other than early termination. We therefore affirm judgment in favor of JCP with respect to Bodum's breach of contract claims and overrule Bodum's third issue.

---

[7] Bodum raised no objection or argument regarding whether JCP had complied with rule 166a(i) in stating the elements of each claim challenged in the no-evidence motion.

[8] Bodum alleges it incurred costs for air freight necessary to have the merchandise on hand for the March 2013 opening. It fails, however, to provide any evidence as to which Bodum entity sustained those damages, provide any evidence that the same costs would not have been incurred for the April launch, or even demonstrate that the late launch was caused by JCP.

**B.      Summary judgment was properly granted on the remainder of Bodum's claims.**

JCP also requested and obtained summary judgment dismissing Bodum's promissory estoppel, breach of the implied covenant of good faith and fair dealing, and declaratory judgment claims, as well as all claims asserted by Bodum AG. We conclude judgment on these claims was also correct.[9]

### 1.   The Shops Agreement bars the promissory estoppel claim

JCP argued numerous grounds for dismissing Bodum's promissory estoppel claim. We rely on one, which we find sufficient to support the trial court's decision and thus renders consideration of the remaining arguments unnecessary.

Bodum contends JCP made various promises "outside of" the Shops Agreement, the breach of which Bodum alleges caused it damages. Specifically, Bodum contends JCP promised it would: (1) advertise Bodum and O&R branded products in print advertising and on the internet; (2) create a "360-degree advertising campaign" that would feature Bodum, including monthly promotions featuring Bodum, with additional advertising in magazine inserts, TV, giveaways and holiday promotions; (3) advertisements regarding Bodum shops were part of JCP's reinvention, about which Bodum expected JCP to make a "big splash"; (4) the shops' design would follow model shops; and (5) the shops would be installed in "high-traffic" locations.

JCP counters that each of the promises on which Bodum relies for their estoppel claim relates to the subject matter of either the TPA or the Shops Agreement. The TPA governed JCP's obligations to purchase Bodum and O&R products, while the Shops Agreement outlined the parties' agreement regarding installation, opening, merchandise content, and JCP's agreement to invest in creation of a "Bodum 'brand experience on jcp.com.'"

---

[9]Bodum does not challenge JCP's judgment regarding its declaratory judgment claim. Any complaint regarding dismissal of that claim, which we would find mooted by judgment in favor of JCP regarding its entitlement to terminate the Shops Agreement, is thus waived. *Crestview Corners Car Wash*, 370 S.W.3d at 56.

As a matter of law, a promissory-estoppel claim lacks viability in the face of a written contract encompassing the same subject. *Fortune Prod. Co. v. Conoco, Inc.*, 52 S.W.3d 671, 684 (Tex. 2000) ("Generally speaking, when a valid, express contract covers the subject matter of the parties' dispute, there can be no recovery under a quasi-contract theory"); *Lake v. Cravens*, 488 S.W.3d 867, 907 (Tex. App.—Fort Worth 2016, no pet.) ("Promissory estoppel and unjust enrichment are equitable remedies that are unavailable when an express contract covers the subject matter of the dispute."). Promises regarding the installation and design of the shops, the merchandise included, and the manner and location of its display fall squarely within the terms of the Shops Agreement.

Likewise, we find the scope of the Shops Agreement sufficiently broad to encompass the promises regarding advertising on which Bodum also relies for their promissory estoppel claim. While neither contract provides express terms regarding advertising, the Shops Agreement addresses JCP's promise to create a "Bodum 'brand experience on jcp.com'" and the TPA, which remained in full force and effect and into which the Shops Agreement was incorporated as an ancillary agreement, provided that it governed "all purchase and sale transactions" between the parties. The TPA thus encompassed the entirety of the parties' commercial transactions, including advertising or a lack thereof. *See Fortune Prod. Co.,* 52 S.W.3d at 684 (absence of contractual reference to "field liquids" in pricing formula did not exclude such liquids from the scope of the parties' contract, where the contract "governs the parties' respective rights and obligations with regard to the entire stream of gas"); *Blackstone Med., Inc. v. Phoenix Surgicals, L.L.C.*, 470 S.W.3d 636, 656 (Tex. App.—Dallas 2015, no pet.) (promissory estoppel doctrine presumes no contract exists). The omission of specific references to advertising in no way diminishes the parties' expressed intent that the TPA and the Shops Agreement govern all aspects of their commercial relationship, including advertising —a natural component of a commercial relationship between a

14

retailer and a supplier. Accordingly, as a matter of law, the Shops Agreement and the TPA bar Bodum's claim for promissory estoppel. We overrule Bodum's fourth issue.

**2. Bodum failed to raise a genuine issue of material fact regarding their breach of the implied covenant of good faith and fair dealing.**

In its no-evidence motion for summary judgment, JCP attacked every element of Bodum's breach of the implied covenant of good faith and fair dealing claim. On appeal as in the trial court, Bodum was required to provide evidence creating a fact issue as to each element. *De La Cruz,* 526 S.W.3d at 595. In this court, Bodum argues only that the trial court overlooked evidence of a special relationship necessary to create an implied duty[10] of good faith and fair dealing, but does not argue or direct us to evidence supporting any of the remaining elements of their claim, such as damages. "To impose an informal fiduciary duty in a business transaction, the special relationship of trust and confidence must exist prior to, and apart from, the agreement made the basis of the suit." *Meyer v. Cathey*, 167 S.W.3d 327, 331 (Tex. 2005) (quoting *Associated Indem. Corp. v.*

---

[10] We observe that Texas does not recognize a common law contract claim premised on breach of the *implied covenant* of good faith and fair dealing. *Arnold v. Nat'l Cty. Mut. Fire Ins. Co*., 725 S.W.2d 165, 167 (Tex. 1987*), holding modified on other grounds by Murray v. San Jacinto Agency, Inc.*, 800 S.W.2d 826 (Tex. 1990) ("While this court has declined to impose an implied covenant of good faith and fair dealing in every contract, we have recognized that a *duty* of good faith and fair dealing may arise as a result of a special relationship between the parties governed or created by a contract") (emphasis added); *Godfrey v. Sec. Serv. Fed. Credit Union*, 356 S.W.3d 720, 726–27 (Tex. App.—El Paso 2011, no pet.) ("Texas does not recognize an implied covenant of good faith and fair dealing."). While breach of the *duty* of good faith and fair dealing creates a tort where a special relationship gives rise to the duty, Texas recognizes such a duty only in very narrow circumstances that do not encompass a bare commercial relationship. *See Crim Truck & Tractor Co. v. Navistar Int'l Transp. Corp.*, 823 S.W.2d 591, 596 (Tex. 1992), *superseded by statute on other grounds as stated in Subaru of America, Inc. v. David McDavid Nissan, Inc.*, 84 S.W.3d 212 (Tex.2002) (refusing to find fiduciary duty in franchise relationship); *Tatum v. Nationsbank of Texas, N.A.*, No. 05-94-01998-CV, 1995 WL 437413, at *4 (Tex. App.—Dallas July 25, 1995, writ denied) (mem. op.) (recognizing that although "special relationships" exist between insurers and insureds, principals and agents, joint venturers, and partners, no such relationship exists in ordinary commercial contract between lender and borrower); C*entral Sav. & Loan Ass'n v. Stemmons Nw. Bank, N.A.*, 848 S.W.2d 232, 239 (Tex. App.—Dallas 1992, no pet.) (The "special relationship" cause of action in tort for breach of the duty of good faith and fair dealing does not extend to ordinary commercial contractual relationships); *Adolph Coors v. Rodriguez,* 780 S.W.2d 477, 480 (Tex. App.—Corpus Christi-Edinburg 1989, writ denied) (refusing to recognize special relationship between supplier and distributor).

*CAT Contracting, Inc.*, 964 S.W.2d 276, 288 (Tex. 1998)). Bodum's evidence consisted of issues arising pursuant to the Shops Agreement rather than prior to it, and they do not suggest the TPA was a sufficient pre-existing and independent basis for such a relationship. No evidence of such a preexisting relationship was presented. And even if Bodum had provided some basis to disregard the TPA's express declaration that each party was an independent contractor and nothing more, an issue Bodum does not address, we would nonetheless affirm summary judgment on the claim based on Bodum's failure to raise a genuine issue of material fact with respect to each element of this claim. *Lowe v. Townview Watersong, L.L.C.*, 155 S.W.3d 445, 447 (Tex. App.—Dallas 2004, no pet.) ("Because summary judgment may have been granted on the unchallenged no-evidence grounds, we must affirm the trial court's summary judgment."). We overrule Bodum's fifth issue.

### 3. Bodum AG failed to raise a genuine issue of material fact regarding dismissal of the claims it asserted.

Bodum AG joined in every claim asserted by Bodum USA, and in the alternative to the breach of contract claim asserted jointly with Bodum USA, asserted an identical claim premised on its contention that Bodum AG was a third-party beneficiary of both the Shops Agreement and the TPA. The claim asserted only by Bodum AG relies on the same facts and contractual interpretation as the breach claim asserted jointly, and thus fails on the same grounds described above. Moreover, even assuming Bodum AG qualified as a third-party beneficiary, a question we need not decide, in both the trial court and this court, Bodum AG, as an entity distinct from Bodum USA, failed to identify facts demonstrating a genuine issue of material fact regarding each element of its claims, for instance the damages Bodum AG sustained. *De La Cruz,* 526 S.W.3d at 594 (nonmovant responding to no evidence summary judgment was "required to bring forth evidence of more than just the existence of damages but that the injury was caused by the alleged wrongful conduct"); *see also Valero S. Texas Processing Co. v. Starr Cty. Appraisal Dist.*, 954 S.W.2d 863, 866 (Tex. App.—San Antonio 1997, pet. denied) ("[F]or the purpose of legal proceedings,

subsidiary corporations and parent corporations are separate and distinct "persons" as a matter of law"). Because JCP's no evidence motion challenged every element of Bodum AG's third-party beneficiary breach claim and Bodum AG failed to demonstrate a genuine issue of fact regarding each element of the claim, *see MaximusAlliance Partners, LLC v. Faber*, No. 05-13-01688-CV, 2015 WL 707033, at *8 (Tex. App.—Dallas Feb. 17, 2015, no pet.) (mem. op.) (where no-evidence motion for summary judgment challenges all elements of a claim, nonmovant was required to identify "more than a scintilla of probative evidence concerning each element"), we affirm the trial court's summary judgment in favor of JCP regarding Bodum AG's breach claim premised on Bodum AG's alleged status as a third-party beneficiary. We overrule Bodum's sixth issue.

### C. Bodum fails to argue how any overruled evidentiary objection was an abuse of discretion or likely caused the rendition of an improper judgment.

In response to JCP's motions for summary judgment, Bodum also objected to various deposition excerpts submitted by JCP in support of their traditional motion for summary judgment.[11] The trial court overruled each objection. On appeal, Bodum omits any argument as to how the trial court abused its discretion in admitting any evidence, and moreover, fails to argue that the admission of any of the challenged evidence probably caused the rendition of an improper judgment. Because Bodum failed to carry their burden with respect to any potential error regarding JCP's evidence, we decline to examine admission of the challenged evidence for an abuse of discretion. TEX. R. APP. P. 44.1; *see also KMS Retail Rowlett, L.P. v. City of Rowlett,* 559 S.W.3d 192, 197-198 n.5 (Tex. App.—Dallas 2017), *aff'd,* 2019 WL 2147205 (Tex. May 17, 2019) (declining to address the merits of evidentiary objections to summary judgment evidence where appellant failed to allege the evidence probably resulted in the rendition of an improper judgment); *see also Kasper v. Meadowwood Ranch Estates, Inc. Prop. Owners Ass'n*, No. 05-07-00982-CV,

---

[11] Bodum objected to the various excerpts asserting each was inadmissible as hearsay, a conclusion, an impermissible legal opinion, speculation, or, lacked relevance.

2008 WL 3579379, at *2 (Tex. App.—Dallas Aug. 15, 2008, no pet.) (mem. op.) (affirming judgment because appellants inadequately briefed their challenge to one independent basis). We overrule Bodum's seventh and final issue.

Finding no error in the trial court's judgment in favor of JCP on each claim asserted by Bodum USA and Bodum AG, we accordingly affirm.[12]

/s/ Michael O'Neill
MICHAEL O'NEILL, JUSTICE


180813f.p05

---

[12] In affirming judgment in favor of JCP, we necessarily dispose of all issues regarding Bodum's motion for partial summary judgment, a motion which was never set for hearing nor ruled upon.



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

BODUM USA, INC. AND BODUM
HOLDING AG, Appellant

No. 05-18-00813-CV     V.

J.C. PENNEY CORPORATION, INC.,
Appellee

On Appeal from the 199th Judicial District
Court, Collin County, Texas
Trial Court Cause No. 199-04943-2013.
Opinion delivered by Justice O'Neill. Chief
Justice Burns and Justice Rosenberg
participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is
**AFFIRMED**.

Judgment entered this 23rd day of October 2019.